**Megan Sharon FISHER, Respondent Below, Appellant,**

v.

**Gary R. FISHER, Petitioner Below, Appellee.**

No. 103, 1996.

Supreme Court of Delaware.

Submitted: March 18, 1997.

Decided: April 7, 1997.

Charles M. Oberly, III of Oberly, Jennings & Drexler, P.A., Wilmington, for appellant.

Alan N. Cooper of Berkowitz, Schagrin, Coonin, Cooper & Dougherty, P.A., Wilmington, for appellee.

Before VEASEY, C.J., WALSH, and HOLLAND, JJ.

HOLLAND, Justice:

The respondent-appellant, Megan Sharon Fisher ("Mother"), and petitioner-appellee, Gary R. Fisher ("Father") were married on June 6, 1987.[1] During the marriage, two sons were born: one on May 3, 1988 and the other on November 15, 1989. This is an

appeal from a final judgment of the Family Court awarding sole permanent custody of the two minor children to the Father.

The Mother has raised two issues in this appeal. First, she contends that the Family Court abused its discretion in awarding the Father sole permanent custody of the parties' children, by failing to properly apply the factors set forth in 13 *Del.C.* § 722 ("Section 722"). Second, the Mother asserts that the Family Court erred, as a matter of law, by not properly following the guidelines of Section 722 and placing exclusive reliance on the recommendation of a psychologist. This Court has concluded that the matter should be remanded to the Family Court for further proceedings in accordance with this opinion.

### Temporary Custody

The parties were divorced on October 13, 1994. The day after the divorce was granted, the Father filed an emergency affidavit and motion for temporary custody. Following a hearing on November 3, 1994, the Family Court awarded temporary custody of the children to the Mother. The Family Court also directed the Mother and the Father to begin joint counseling.

### May 12, 1995 Hearing
### Permanent Custody Undecided

The Family Court held a hearing on the issue of permanent custody and visitation on May 12, 1995. The Family Court rendered its opinion on May 18, 1995. In reaching this decision, the Court made findings of fact, conclusions of law, and specifically applied all of the factors set forth in Section 722.

The Family Court found that the children had strong relationships with both parents. It also concluded that the children were able to adapt to changes in circumstances. The evidence indicated that both the Mother and the Father contributed to the children's stability and happiness. The evidence reflected that both parents provided for the children.

The Family Court noted, however, that while the parties "appear capable" of providing proper care to the children, "it is obliged

---

1. Pseudonyms were adopted pursuant to Supreme Court Rule 7(d).

to discuss the serious allegations of emotional instability raised by each parent with regard to the other." The court explained:

The evidence clearly indicates that both Mother and Father have sporadically engaged in erratic behavior which, while undoubtedly a result of their deteriorated relationship, nonetheless casts doubt as to their mental fitness. Moreover, there have been a number of documented incidences of domestic violence between the parties. It is obvious to this Court that few cases have called more for professional counseling than the case at bar. And, in a case such as this, comments from a counselor who has had extensive contact with the parties would be extremely enlightening to this Court in formulating its permanent custody Order. However, the testimony offered at the hearing was limited to that of the parties, and is consequently insufficient upon which to issue a permanent custody Order. The Court does recognize the need for an interim custody Order while an appropriate counseling schedule is implemented by the parties. And it also recognizes that there is no compelling reason to disrupt the boys' current living arrangement, which has proven successful thus far. (Footnote omitted.)

Accordingly, the Family Court awarded the Mother and the Father temporary joint legal custody, with the Mother being granted temporary primary residential custody. The Family Court further ordered the Mother and the Father to schedule an appointment, within two weeks, with one of four psychologists: Dr. Jay Jemail, Dr. Paula Malone, Dr. Marcia Orlov, or Dr. Diana Terrell.[2] The Family Court stated that the "purpose of the appointment is for each party to undergo a psychological evaluation, and for both parties to start joint counseling immediately."

The Family Court then ordered a full hearing for permanent custody to be scheduled approximately six months from the date of its May 18, 1995 decision. The Family Court stated that at that hearing, it would hear testimony from the psychologist selected by the parents. It also informed the

2. If the parties were unable to agree regarding the selection of a psychologist, the Family Court

parties that it would hear evidence of any subsequent events that transpired.

Following entry of the Family Court's May 18, 1995 orders, the Father's attorney wrote to the Mother's attorney and requested that the Mother select one of the psychologists. The Mother selected Dr. Jay Jemail. Dr. Jemail did an evaluation of the parties which included administering the following tests: Access to Adult Strength–Parent Self Report by Bricklin, Child Data–Parent Report by Bricklin, Millon Clinical Multiaxial Inventory–III, Minnesota Multiphasic Personality Inventory–2, and Rorschach Inkblot Test.

Counseling sessions with Dr. Jemail began June 28, 1995 and lasted through January 29, 1996. Dr. Jemail had eight joint counseling sessions with the parties, four sessions with the Mother, and ten sessions with the Father. Dr. Jemail also met with the Father and the two children on one occasion, and with the Mother and the children on another occasion. There were two additional sessions by telephone with the Father on January 26, 1996 and January 29, 1996.

Dr. Jemail submitted a report to the Family Court dated January 29, 1996. Dr. Jemail concluded that a joint custodial arrangement would not work. According to Dr. Jemail, only a sole custodial arrangement would be appropriate. Dr. Jemail opined that sole custody should be with the Father, because the Father is more stable and the Mother's reaction to the children is too erratic.

### *January 31, 1996 Hearing*
### *Permanent Custody Judgment*

A full hearing was held on January 31, 1996. Dr. Jemail testified. The Family Court was apparently prepared to hear evidence of any other events that had transpired since its hearing on May 12, 1995. Following the January 31, 1996 hearing, in an opinion dated February 8, 1996, the Family Court awarded the Father sole custody of the parties' two children, stating, in part:

Based upon all of the evidence that was presented in this case, both at the prior hearing on May 12, 1995 and the most

stated it would choose randomly from the four names it had suggested.

recent hearing on January 31, 1996, the Court concludes that sole legal custody of [the boys] should be awarded to their natural father ... and that the transition should take place immediately. In reaching this conclusion, I have reviewed all of the factors set forth in 13 *Del.C.* § 722 and have determined, based upon the evidence presented at these hearings, as set forth in this Opinion and in the May 18, 1995 decision, that the interests of these children will best be served by primarily residing with Father, who should be the sole custodian and decision maker with respect to these boys.

The Family Court awarded the Mother visitation at least every other weekend and one night per week to the extent possible, provided that it did not interfere with school schedules or activities.

### Issue on Appeal
### Section 722 Factors

■ In this appeal, the Mother contends that the Family Court abused its discretion in awarding the Father sole custody of the parties' children by failing to properly apply the factors set forth in Section 722. Section 722 provides:

(a) The [Family] Court shall determine the legal custody and residential arrangements for a child in accordance with the best interests of the child. In determining the best interests of the child, the Court shall consider all relevant factors including:

   (1) The wishes of the child's parent or parents as to his or her custody and residential arrangements;

   (2) The wishes of the child as to his or her custodian(s) and residential arrangements;

   (3) The interaction and interrelationship of the child with his or her parents, grandparents, siblings, persons cohabitating in the relationship of husband and wife with a parent of the child, any other residents of the household or persons who may significantly affect the child's best interests;

   (4) The child's adjustment to his or her home, school and community;

   (5) The mental and physical health of all individuals involved;

   (6) Past and present compliance by both parents with their rights and responsibilities to their child under § 701 of this title; and

   (7) Evidence of domestic violence as provided for in Chapter 7A of this title.

13 *Del.C.* § 722.

The Mother acknowledges that the Family Court considered and addressed all of the factors in Section 722 when it determined temporary custody at the May 12, 1995 hearing and in the opinion that followed on May 18, 1995. The Mother argues, however, that the Family Court failed to consider and address the Section 722 factors properly when the Family Court made its ultimate custody determination on February 8, 1996. According to the Mother, the Family Court erred by relying exclusively on the testimony of Dr. Jemail when it awarded the Father sole legal custody.

The record reflects that in its February 8, 1996 decision, although the Family Court did not specifically address each of the factors in Section 722, the Family Court did state that it had "reviewed all of the factors set forth in [Section] 722." This Court has previously considered the issue of whether a Family Court decision should be set aside because the trial judge failed to explicitly address each of the statutory factors in Section 722. *Jones v. Lang,* Del.Supr., 591 A.2d 185 (1991). In *Jones,* even though this Court found no error of law or abuse of discretion by the Family Court, we expressed our concern about a custody disposition that merely considered but did not address each factor in Section 722, stating:

Notwithstanding the trial court's failure to make explicit reference to the controlling statutory factors of section 722, we think that a fair reading of the decision below demonstrates implicit application of the statutory factors in the court's effort to reach a decision on modification that accords with the best interests of the child.

. . . .

... While *it would have been clearly preferable for the court to explicitly refer to section 722's* statutory factors, we cannot find that the court disregarded factors (3), (4) and (5) of section 722.

*Id.* at 188 (emphasis added).

### Section 722 Factors
### Consideration and Analysis

Each custody disposition requires the criteria set forth in Section 722 to be balanced in accordance with the factual circumstances of the evidence presented to the Family Court. The amount of weight given to one factor or combination of factors will be different in any given proceeding. It is quite possible that the weight of one factor will counterbalance the combined weight of all other factors and be outcome determinative in some situations.

The Family Court apparently concluded that this was such a case. The record does not reflect whether any other circumstances changed subsequent to the Family Court's order of May 18, 1995.[3] Dr. Jemail's comprehensive expert testimony was clearly the determining factor, however, in the Family Court's thorough and thoughtful twenty-two page disposition of February 8, 1996 that is the subject matter of this appeal.

The record does reflect, however, that on May 18, 1995, the Family Court specifically considered each of the criteria set forth in Section 722 and found "no compelling reason to disrupt the boys' current living arrangement, which has proven successful thus far." Accordingly, when the Family Court made a dramatic change "in the boys' current living arrangement," with its February 8, 1996 permanent custody judgment, it should have addressed each aspect of Section 722 explicitly rather than implicitly. *Jones v. Lang,* Del.Supr., 591 A.2d 185 (1991). This Court cannot conduct a meaningful appellate review of a permanent custody judgment unless the Family Court sets forth a complete analysis of the consideration it gave to all of the factors in Section 722. *See Dalton v. Clanton,* Del.Supr., 559 A.2d 1197, 1212 (1989).

There are three alternative dispositions that are generally available to this Court. The Mother argues that the Family Court's February 8, 1996 judgment should be reversed. The Father argues that judgment should be affirmed. Finally, this matter could be remanded to the Family Court for the purpose of explaining its consideration and analysis of the factors in Section 722 that resulted in its February 8, 1996 judgment.

This Court has concluded that the best interests of the children and fundamental fairness to both the Mother and the Father compel a fourth form of disposition.[4] This matter is remanded to the Family Court for an entirely new hearing on the issue of permanent custody. That hearing should take place within sixty days after issuance of this Court's mandate. In the interim, the Family Court's February 8, 1996 judgment shall remain in full force and effect.

### Conclusion

This matter is remanded to the Family Court for a new hearing on the issue of permanent custody, in accordance with this opinion and all of the factors set forth in Section 722. Jurisdiction is not retained.

---

3. The Mother seems to either contend or acknowledge that the other factual circumstances of this case had not changed between May 12, 1995 and January 31, 1996.

4. The appeal in this matter was delayed because the Mother originally proceeded in this Court *pro se.* After the Mother retained legal counsel, the issues on appeal were re-briefed and scheduled for oral argument at her attorney's request.