IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ABBY LANDON,[1] | § | |
| | § | No. 44, 2015 |
| Respondent Below, | § | |
| Appellant, | § | Court Below—Family Court of |
| | § | the State of Delaware in and for |
| v. | § | New Castle County |
| | § | |
| DIVISION OF SERVICES FOR | § | File No. 14-10-01TN |
| CHILDREN, YOUTH AND THEIR | § | Pet. No. 14-26935 |
| FAMILIES, | § | |
| | § | |
| Petitioner Below, | § | |
| Appellee. | § | |

Submitted: July 2, 2015
Decided: September 10, 2015

Before **VALIHURA**, **VAUGHN** and **SEITZ**, Justices.

**O R D E R**

This 10th day of September 2015, it appears to the Court that:

(1) The appellant, Abby Landon ("Mother"), has appealed the Family Court's order dated January 6, 2015, terminating her parental rights in her children, a daughter born on June 24, 2010 and a son born on December 29, 2011 (collectively, the "Children"). Mother's counsel ("Counsel") has filed an opening brief and a motion to withdraw under

_____

[1] By Order dated February 11, 2015, the Court assigned a pseudonym to the appellant. Del. Supr. Ct. R. 7(d).

Supreme Court Rule 26.1(c).[2] Counsel asserts that he has made a conscientious review of the record and the law and can find no arguable grounds for appeal. Mother was given the opportunity but did not submit points for this Court's consideration. In response to Counsel's submission, the Division of Family Services ("DFS") and the Children's Court Appointed Special Advocate have moved to affirm the termination of Mother's parental rights.

(2)     On October 3, 2013, the Family Court issued an *ex parte* order granting emergency custody of the Children to DFS based on concerns that Mother and the Children had been staying in a homeless shelter that could no longer accommodate them. The following day, October 4, 2013, DFS filed a dependency and neglect petition against Mother.[3]

(3)     Counsel was appointed to represent Mother at the Preliminary Protective Hearing on October 9, 2013. At the hearing on October 9 and the Adjudicatory Hearing on October 30, Mother stipulated to a finding that the Children were dependent. By the date of the Adjudicatory Hearing, the Children were settled in a foster home and attending day care. Also, the

---

[2] *See* Del. Supr. Ct. R. 26.1(c) (governing appeals without merit in termination of parental rights cases).

[3] The petition was also filed against the Children's father, who was incarcerated at the time. On October 31, 2014, the Children's father voluntarily consented to the termination of his parental rights.

Children had gone to various medical appointments and had been referred for services to address behavioral issues. At the conclusion of the Preliminary Protective Hearing and the Adjudicatory Hearing, the Family Court continued custody of the Children with DFS after finding that DFS had made reasonable reunification efforts and that no relative placements were available.

(4) On November 5, 2013, Mother entered into a case plan for reunification ("Case Plan"). The Family Court approved the Case Plan at a Dispositional Hearing on November 26, 2013.

(5) Mother's Case Plan addressed her "emotional instability/mental health issues," "attitude about parenting," lack of housing, lack of income, and "family violence concerns." Also, the Case Plan set up Mother's weekly supervised visitation with the Children. Under the Case Plan, Mother was required to complete a mental health evaluation, participate in parenting classes, find and maintain safe, stable housing, obtain employment or other income, and complete a domestic violence program. DFS was required to refer Mother for the mental health evaluation and provide transportation, if necessary, provide a parent aide, assist Mother with applying for housing and disability benefits, and make referrals for a home evaluation and a domestic violence program.

3

(6) Review Hearings were held in February, April and July 2014. After each hearing, the Family Court issued a detailed order summarizing the evidence and making required findings.

(7) At each Review Hearing, Mother's DFS treatment worker testified about Mother's progress under the Case Plan and the Children's progress in the foster home. At the April hearing, the parent aide testified about Mother's visitation with the Children. Overall, the testimony revealed that Mother's visitation with the Children, although sporadic, was otherwise successful, but that Mother was not complying with other parts of the Case Plan and was still without appropriate, stable housing.

(8) After each Review Hearing, the Family Court found that the Children remained dependent, and that it was in the Children's best interest to remain in the custody of DFS. Also, the Family Court found that Mother had not complied with the Case Plan, and that DFS had made reasonable reunification efforts. Moreover, the Family Court found that the Children's foster home was safe and appropriate, and that placement of the Children in the home of a relative was not appropriate.

(9) On August 19, 2014, DFS filed a motion to change the goal from reunification to termination of parental rights. DFS alleged that the Children had been in DFS custody since October 2013 and that attempts to

reunify the family had been unsuccessful and were no longer practicable. Thereafter, the Family Court held a Permanency Hearing on September 18, 2014. In the written order that issued on September 19, 2014, the Family Court summarized the evidence, made the required findings, and ruled on the motion to change goal.

(10) At the Permanency Hearing, the Family Court heard testimony from the DFS treatment worker, the Children's Court Appointed Special Advocate, and Mother. The DFS treatment worker testified that Mother last saw the Children on June 30, 2014, that the Children were doing well in the foster home, and that Mother was living in Pennsylvania under circumstances that were not clear. The Court Appointed Special Advocate testified that the Children were doing well in the foster home. Mother testified that she was living in a five-bedroom home in Pennsylvania and had been sober for six months. Also, Mother testified that she had applied for disability benefits in April 2014 and was waiting for the decision. Mother conceded that she had not spoken to the parent aide in at least three months and had fallen out of touch with DFS.

(11) In the September 19 order, the Family Court found that the Children remained dependent, and that it was in the Children's best interest to stay in the custody of DFS. Also, the court found that Mother had not

5

complied with the Case Plan, that DFS had made reasonable reunification efforts, that the Children's foster home was safe and appropriate, and that placement of the Children in the home of a relative was not appropriate. The Family Court granted the motion to change goal from reunification to termination and scheduled a termination of parental rights hearing for October 31, 2014. Lastly, the Family Court directed DFS to make a referral for a home study on Mother's living situation in Pennsylvania.

(12) On September 30, 2014, DFS filed a petition seeking to terminate Mother's parental rights on the statutory ground that Mother had not planned adequately for the Children's physical needs or mental and emotional health and development. At the termination of parental rights ("TPR") hearing on October 31, 2014, the Family Court heard testimony from Mother, the DFS treatment worker, the Court Appointed Special Advocate, and the Children's foster mother. At the conclusion of the hearing, the Family Court deferred its decision pending its receipt and consideration of the home study report on Mother's residence in Pennsylvania.

(13) DFS submitted the home study report on December 9, 2014. The home study was conducted by the Lancaster County Children and Youth Agency on October 28, 2014. The report recommended that the Children

6

not be placed with, or cared for by Mother, based on findings that Mother's housing was unsafe and unstable, and that Mother had unaddressed mental health needs, no support system, no income, and no means of transportation.

(14) By order dated January 6, 2015, the Family Court granted the TPR petition and terminated Mother's parental rights in the Children. This appeal followed.

(15) In Delaware, termination of parental rights is based on a two-step statutory analysis.[4] In the first step, the Family Court must determine whether there is clear and convincing evidence of a statutory basis for termination.[5] When, as in this case, the statutory basis for termination is an alleged failure to plan,[6] the court must determine, by clear and convincing evidence, that there is proof of at least one of five additional statutory conditions,[7] and that DFS "made *bona fide*, reasonable efforts to reunite the family."[8]

(16) In the second step of the analysis, the Family Court must consider eight statutory best interest factors and determine whether there is

---

[4] 13 *Del. C.* § 1103(a) (2009).

[5] *Id. Shepherd v. Clemens*, 752 A.2d 533, 537 (Del. 2000).

[6] 13 *Del. C.* § 1103(a)(5).

[7] *Id.*

[8] *Powell v. Dep't of Serv. for Children, Youth & Their Families*, 963 A.2d 724, 737 (Del. 2008) (quoting *Newton v. Div. of Family Serv.*, 2006 WL 2852409, at *2 (Del. 2006) citing *In re Hanks*, 553 A.2d 1171, 1179 (Del. 1989))).

clear and convincing evidence that severing parental rights is in the best interest of the child.[9]

> This Court has held that, while all of the [best interest] factors . . . must be considered by the court, when balancing the relevant factors, the Family Court may give different weight to different factors. "The amount of weight given to one factor or combination of factors will be different in any given proceeding. It is quite possible that the weight of one factor will counterbalance the combined weight of all other factors and be outcome determinative in some situations."[10]

(17) In this case, the Family Court concluded that there was clear and convincing evidence of Mother's failure to plan based on findings that Mother had not completed any elements of the Case Plan.[11] The Family Court also found clear and convincing evidence of four of the five additional statutory conditions,[12] and that termination of parental rights was in the Children's best interests.[13]

---

[9] *See* 13 *Del. C.* § 722(a)(1)-(8) (listing best interest factors). *Powell v. Dep't of Serv. for Children, Youth & Their Families*, 963 A.2d 724, 731 (Del. 2008).

[10] *Barr v. Div. of Family Serv.*, 974 A.2d 88, 98 (Del. 2009) (citing *Powell v. Dep't of Serv. for Children, Youth & Their Families*, 963 A.2d 724, 735 (Del. 2008) quoting *Fisher v. Fisher*, 691 A.2d 619, 623 (Del. 1997))).

[11] 13 *Del. C.* § 1103(a)(5).

[12] 13 *Del. C.* § 1103 (a)(5)a.1, 2, 4 and 5.

[13] 13 *Del. C.* § 722(a)(1)-(8). Of the eight best interest factors, the Family Court found that one factor favored Mother, four factors weighed in favor of terminating Mother's parental rights, one heavily so, one factor was inapplicable, and two factors were neutral.

(18) This Court's review of a decision to terminate parental rights requires consideration of the facts and the law as well as the inferences and deductions made by the Family Court.[14] To the extent rulings of law are implicated, our review is *de novo*.[15] To the extent issues implicate rulings of fact, we conduct a limited review of the factual findings of the Family Court to assure that they are sufficiently supported by the record and are not clearly wrong.[16] This Court will not disturb inferences and deductions that are supported by the record and the product of an orderly and logical deductive process.[17] If the Family Court has correctly applied the law, our review is limited to abuse of discretion.[18]

(19) In this case, having carefully considered the parties' submissions on appeal and the Family Court record, the Court concludes that the termination of Mother's parental rights should be affirmed. There is ample evidence in the record supporting the Family Court's termination of Mother's parental rights on the statutory basis that Mother failed to plan for the Children's physical needs or mental and emotional health and

---

[14] *Wilson v. Div. of Family Serv.*, 988 A.2d 435, 439-40 (Del. 2010) (citing cases).

[15] *Id.* at 440.

[16] *Id.*

[17] *Id.*

[18] *Id.*

9

development.   Also, there is ample record evidence that it was in the Children's best interests to terminate Mother's parental rights.   The record reflects that the Family Court thoroughly considered the best interest factors and was guided by the factual findings it made as to each.   This Court finds no abuse of discretion in the Family Court's factual findings and no error in the court's application of the law to the facts.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.  Counsel's motion to withdraw is moot.

BY THE COURT:

_____
Justice

10