IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CAITLYN BOWER,[1] | § | |
| | § | No. 676, 2015 |
| Respondent Below, | § | |
| Appellant, | § | Court Below—Family Court of |
| | § | the State of Delaware in and for |
| v. | § | Sussex County |
| | § | |
| DEPARTMENT OF SERVICES FOR | § | File No. 15-04-01TS |
| CHILDREN, YOUTH AND THEIR | § | Pet. No. 15-09283 |
| FAMILIES/DIVISION OF FAMILY | § | |
| SERVICES, | § | |
| | § | |
| Petitioner Below, | § | |
| Appellee, | § | |
| | § | |
| and | § | |
| | § | |
| OFFICE OF THE CHILD | § | |
| ADVOCATE, | § | |
| | § | |
| Appellee. | § | |

Submitted: April 7, 2016
Decided: June 9, 2016

Before **HOLLAND**, **VALIHURA**, and **VAUGHN**, Justices.

**O R D E R**

This 9th day of June 2016, it appears to the Court that:

(1)    Caitlyn Bower ("Mother") has appealed the Family Court's order

dated November 16, 2015, terminating her parental rights in two of her children, a

---

[1] By Order dated December 14, 2015, the Court assigned a pseudonym to the appellant. Del. Supr. Ct. R. 7(d).

daughter, Macy, born in 2011, and a son, Jeffrey, born in 2013 (collectively, "Children"). Another daughter, Ashley, born in 2014, is in the custody of Mother's parents in Pennsylvania.[2] The parental rights of the Children's father are not at issue in this appeal.

(2)   Mother's counsel ("Counsel") has filed a no-merit brief and a motion to withdraw under Supreme Court Rule 26.1(c). Counsel asserts that she has made a conscientious review of the record and the law and can find no arguable grounds for appeal. Mother has submitted several issues for the Court's consideration. The appellees, the Division of Family Services ("DFS") and the Office of Child Advocate ("OCA"),[3] have responded to Counsel's position, Mother's points, and have moved to affirm the Family Court judgment.

(3)   The Children were born in Pennsylvania and lived there until Mother moved to Delaware in 2014 when Jeffrey was five months old and Macy was two years old. Jeffrey was born drug-addicted and with complex medical issues, and was kept at The Children's Hospital of Philadelphia ("Children's Hospital") for several weeks following his birth. Before moving to Delaware, Mother had extensive involvement with Pennsylvania's Child Protective Services over

---

[2] The Court has adopted the pseudonyms used in the opening brief for the Children and for the Children's sibling born in 2014.

[3] An OCA attorney was appointed as the Children's guardian *ad litem* in the Family Court proceedings.

Jeffrey's on-going need for medical care to address his serious medical issues and Mother's failure to take him to his medical appointments.

(4) Mother and the Children moved to Delaware on January 28, 2014. On February 10, 2014, Children's Hospital contacted DFS with concerns that Mother was not taking Jeffrey to his medical appointments. On February 22, 2014, the day after DFS located Mother and the Children, Jeffrey was hospitalized at the AI duPont Hospital for Children where he remained until May 2014. On March 5, 2014, when Mother threatened to remove Jeffrey from the hospital against medical advice, DFS was granted temporary emergency custody of Jeffrey to ensure that he continued to receive appropriate medical care. Less than thirty days later, on April 1, 2014, DFS was granted temporary emergency custody of Macy, when Mother was arrested and incarcerated on drug offenses.

(5) Immediately after obtaining temporary emergency custody of the Children, DFS raised a jurisdictional issue concerning whether Delaware had continuing jurisdiction to conduct the dependency/neglect proceedings or whether those proceedings should take place in the Children's home state of Pennsylvania.[4] After the parties' counsel submitted briefs on the issue, the Family Court issued an

---

[4] *See* 13 *Del. C.* § 1902(7) ("'Home State' means the state in which a child lived with a parent or a person acting as a parent for at least 6 consecutive months immediately before the commencement of a child-custody proceeding. In the case of a child less than 6 months of age, the term means the state in which the child lived from birth with any of the persons mentioned.").

order concluding that, in the absence of custody proceedings initiated by Pennsylvania, Delaware would become the Children's home state on July 28, 2014—six months after the Children's move to Delaware—and on that date the court's temporary emergency custody determination would become final.[5]

(6)     At the Children's preliminary protective hearings in March and April 2014, and at each of the mandated review hearings that followed, the Family Court found that the Children were dependent and continued custody with DFS. The court also found that DFS had made reasonable efforts for reunification.

(7)     During the eighteen-month dependency/neglect and termination of parental rights proceedings, Mother spent most of that time incarcerated in Pennsylvania. Mother's incarceration affected her ability to participate in the proceedings, especially in the dependency/neglect hearings. As a result of the logistical difficulties associated with the incarceration, Mother was unable to participate in two of the eight dependency/neglect hearings. With the exception of one other hearing, which Mother chose not to attend to avoid an outstanding arrest warrant in Delaware, Mother attended, or participated by telephone, in the other dependency/neglect hearings and in the termination of parental rights hearings.

---

[5] *See* 13 *Del. C.* § 1923(b) ("If a child custody proceeding has not been or is not commenced in a court of a state having jurisdiction . . . a [temporary emergency] child custody determination made under this section becomes a final determination if it so provides and this State becomes the home state of the child.").

(8)     During the dependency/neglect proceedings, Mother entered into a case plan that identified a number of problem areas she needed to remediate to achieve reunification with the Children.  The case plan required Mother to:  obtain employment or other income to provide for her family's needs; become involved in the medical care of the Children and attend appointments; take a parenting class; have psychological, substance abuse, and mental health evaluations, and participate in any recommended treatment; resolve her legal issues; and acquire secure safe and stable housing.

(9)     During the dependency/neglect proceedings, the Family Court received three guardianship petitions filed by family members interested in serving as guardians for one or both Children.  One petition, filed by the maternal grandparents, sought guardianship of Macy only.  The other two petitions, filed by the paternal grandparents and a paternal cousin, sought guardianship of both Children.  DFS and OCA supported the paternal cousin's guardianship petition but did not support the petitions filed by the maternal and paternal grandparents.

(10)   On January 20, 2015, DFS filed a motion for a change of goal from reunification to termination of parental rights for the purpose of adoption.  DFS alleged that the Court of Common Pleas of Bucks County, Pennsylvania, sentenced Mother on January 7, 2015, to four to eight years of incarceration and that, as a

result, Mother would be unable to complete the terms of her case plan and achieve reunification in a reasonable time.

(11) In February 2015, following a home study and approval of the paternal cousin's home as a suitable placement, the Children began living with the paternal cousin and her husband in New Jersey. At a review hearing on February 26, 2015, the paternal cousin testified that she was equipped with all of the medical equipment needed for Jeffrey's care, and that Jeffrey was doing well in spite of his significant needs. Also, the paternal cousin testified that she was in the process of seeking a therapist for Macy, who was "a little emotional . . . [and] confused as to what's going on and why she's constantly, you know, losing people in her life."[6] The paternal cousin testified that if the matter proceeded to a termination of parental rights, she and her husband wanted to adopt the Children.

(12) The Family Court considered DFS' motion for a change of permanency goal and the three pending guardianship petitions at a hearing on April 2, 2015. At the outset of the hearing, the court dismissed the guardianship petition filed by the paternal grandparents on the basis that they had submitted a written request to withdraw the petition and because they had not appeared at the hearing. The court heard testimony from the maternal grandparents on their guardianship petition and testimony from Mother in support of that petition. The paternal cousin

---

[6] Hr'g Tr. at 16 (Feb. 26, 2015).

testified that she was no longer interested in pursuing guardianship because she and her husband wanted to adopt the Children.

(13) By order dated April 2, 2015, the Family Court denied the maternal grandparents' petition seeking guardianship of Macy. The court noted that Pennsylvania had not approved the maternal grandparents as a placement for the Children, and that there was no evidence indicating that Macy and Jeffrey should be separated. Also, the court found that awarding guardianship to the maternal grandparents was not in the Children's best interests. The court granted the motion to change the permanency goal from reunification to termination of parental rights for purposes of adoption on the basis that the Children deserved a permanent home, which could best be achieved through an adoption.

(14) On April 3, 2015, DFS filed a petition for termination of parental rights on the basis of Mother's failure to plan for the Children's physical needs or mental and emotional health and development. Mother consented to the termination at a hearing on June 18, 2015. When Mother later changed her mind and revoked her consent, a contested hearing was scheduled for October 15, 2015.

(15) When considering a termination of parental rights petition in Delaware, the Family Court must engage in a two-step statutory analysis.[7] First, the court must determine whether there is clear and convincing evidence of a

---

[7] 13 *Del. C.* § 1103(a). *Shepherd v. Clemens*, 752 A.2d 533, 537 (Del. 2000).

statutory basis for termination such as, in this case, failure to plan.[8] Second, if the court finds a statutory basis for termination, the court must determine whether there is clear and convincing evidence that severing parental rights is in the best interest of the child.[9]

(16) At the hearing on October 15, 2015, the parties presented evidence and arguments in support of their respective positions on whether there was clear and convincing evidence of Mother's failure to plan and that terminating Mother's parental rights was in the best interests of the Children. Tim Dennison, DFS family service specialist, testified that Mother had not completed any aspect of the reunification case plan. Mother testified that she was making headway on the case plan in prison, explaining that she was enrolled in a parenting class and was receiving treatment for mental health issues, and that when she gets closer to her release date, she will participate in programs addressing substance abuse and employment. Mother testified that she was optimistic that she would prevail in her appeal filed from her January 7, 2015 sentence, and that she could be released as early as the summer of 2016. Mother also testified that when she is released from prison, she plans to live with her parents, who have guardianship of her youngest child, Ashley, and that there is room at her parents' house for Jeffrey and Macy.

---

[8] § 1103(a)(5).

[9] *See* 13 *Del. C.* § 722(a)(1)-(8) (listing best interest factors). *Powell v. Dep't of Servs. for Children, Youth & Their Families*, 963 A.2d 724, 731 (Del. 2008).

(17) At the October 15 hearing, Dennison also testified about the Children's status, reporting that Macy was in preschool, and that she was physically healthy, up-to-date on her medical checks, and receiving therapy to address anxiety and attachment issues. Dennison testified that Jeffrey was "doing really well despite all of his issues," and that he had "a lot of special services in place" such as a daily home health nurse and once or twice a week appointments with occupational, speech and physical therapists.[10] Dennison testified that, in his opinion, it was in the best interests of both Macy and Jeffrey "to stay where they are at . . . in the care of [the paternal cousin and her husband]."[11] Mother testified that she thought it was important for Macy, Jeffrey, and Ashley to stay together and to be cared for by Mother, and that whatever support services Jeffrey was receiving in New Jersey also could be found in Pennsylvania.

(18) By order dated November 16, 2015, the Family Court granted the petition to terminate Mother's parental rights. The court concluded there was clear and convincing evidence of a statutory basis for terminating Mother's parental rights based on her failure to plan. The court found that Mother had not completed any of the terms of her case plan despite DFS' efforts for reunification; that the Children had been in the custody of DFS for a period of over one year, and that

---

[10] Hr'g Tr. at 24 (Oct. 15, 2015).

[11] *Id.* at 25.

9

Mother was incapable of discharging her parental responsibilities due to her extended incarceration. After considering the best interest factors under 13 *Del. C.* § 722, the court made factual findings and concluded that there was clear and convincing evidence that severing Mother's parental rights was in the best interests of the Children. This appeal followed.

(19) This Court's review of a decision to terminate parental rights requires consideration of the facts and the law as well as the inferences and deductions made by the Family Court.[12] To the extent rulings of law are implicated, our review is *de novo*.[13] To the extent issues implicate rulings of fact, we conduct a limited review of the factual findings of the Family Court to assure that they are sufficiently supported by the record and are not clearly wrong.[14] This Court will not disturb inferences and deductions that are supported by the record and the product of an orderly and logical deductive process.[15] If the Family Court has correctly applied the law, our review is limited to abuse of discretion.[16]

(20) On appeal, Mother raises three issues for the Court's consideration. First, Mother argues that the Family Court's initial assumption of temporary

---

[12] *Wilson v. Div. of Family Serv.*, 988 A.2d 435, 439-40 (Del. 2010) (citing cases).

[13] *Id.* at 440.

[14] *Id.*

[15] *Id.*

[16] *Id.*

emergency jurisdiction was unwarranted because Jeffrey was not mistreated or abused in Delaware. Mother's claim is without merit. After a contested hearing, the Family Court concluded that Jeffrey had significant health issues, which Mother was not adequately addressing. The court's exercise of temporary emergency jurisdiction was entirely proper.

(21) Second, Mother contends that the Family Court did not evaluate the importance of the Children's interrelationship with their younger sister, Ashley, as required under 13 *Del. C.* § 722(a)(3).[17] Mother's claim is without merit. The court may give different weight to different factors when balancing the best interest factors.[18] Mother has not shown that the court abused its discretion when it did not specifically address the Children's interrelationship with Ashley when considering the best interest factor in § 722(a)(3).

(22) Third, Mother contends that the Court unfairly favored the goal of terminating her parental rights over the equally legitimate goal of granting guardianship of the Children to the maternal grandparents, which would have preserved her parental rights. Mother contends that her parental rights should not

---

[17] *See* 13 *Del. C.* § 722(a)(3) ("In determining the best interests of the child, the Court shall consider all relevant factors including . . . [t]he interaction and interrelationship of the child with his or her parents, grandparents, siblings . . . ").

[18] *Fisher v. Fisher*, 691 A.2d 619, 623 (Del. 1997).

11

have been terminated, and that she should have been given the opportunity to continue to work on her case plan while incarcerated.

(23) Mother's claim concerning the denial of the maternal grandparents' guardianship petition is unavailing, and her claim concerning the termination of her parental rights, even though she was making headway on the case plan while incarcerated, is without merit. Because the maternal grandparents did not appeal the denial of their guardianship petition, Mother has no standing to challenge that decision.[19] This Court has found that when a parent's incarceration prevents him or her from completing the major aspects of the reunification case plan, the parent has failed to plan adequately under the termination of parental rights statute.[20]

(24) Having carefully considered the parties' submissions on appeal and the Family Court record, we conclude there is clear and convincing evidence supporting the Family Court's termination of Mother's parental rights. This Court can discern no abuse of discretion in the Family Court's factual findings and no error in the court's decision to terminate Mother's parental rights. The record clearly reflects that Mother's extended incarceration impeded her ability to successfully complete any aspect of her case plan, and that a permanent, stable

---

[19] *Upton v. Div. of Family Servs.*, 2014 WL 7010967 (Del. Dec. 11, 2014) (citing *Lane v. Div. of Family Servs.*, 2014 WL 1272264 (Del. Mar. 27, 2014)).

[20] *Morris v. Div. of Family Servs.*, 2015 WL 3767104 (Del. June 15, 2015) (citing *Upton v. Div. of Family Servs.*, 2014 7010967, at *3-4 (Del. Dec. 11, 2014); *Boyer-Coulson v. Div. of Family Servs.*, 2012 WL 1944868, at *2 (Del. May 30, 2012)).

12

home and adoption was in the Children's best interests. We are satisfied that Counsel made a conscientious effort to examine the record and the law and properly determined that Mother could not raise a meritorious claim on appeal.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED. Counsel's motion to withdraw is moot.

BY THE COURT:

*/s/ Karen L. Valihura*
Justice

13