IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JORDAN LAWRENCE MILLER-HOWARD,[1] | § § | No. 655, 2015 |
| | § | |
| Petitioner Below-Appellant, | § § | |
| | § | Court Below—Family Court |
| v. | § | of the State of Delaware |
| | § | |
| JANE MASON, | § | File No. CN09-04640 |
| | § | Petition No. 15-11181 |
| Respondent Below-Appellee. | § | |

Submitted: May 6, 2016
Decided: July 21, 2016

Before **STRINE**, Chief Justice; **VAUGHN**, and **SEITZ**, Justices.

## <u>**ORDER**</u>

This 21st day of July 2016, upon consideration of the opening brief[2] and the record on appeal, it appears to the Court that:

(1)     The appellant, Jordan Lawrence Miller-Howard ("Father"), filed this appeal from the Family Court's judgment, dated November 10, 2015, which denied his petition for sole custody of the parties' two minor children ("the Children"). Having reviewed Father's arguments on appeal

---

[1] The Court assigned pseudonyms to the parties under Supreme Court Rule 7(d).

[2] The appellee, Jane Mason ("Mother"), did not file an answering brief on appeal. The Clerk of the Court informed the parties that the matter would be considered solely on the basis of Father's opening brief and the record below.

and the record below, we conclude that the Family Court erred by not awarding Father sole custody. Accordingly, we reverse.

(2) The parties were married in 2005 and divorced in 2010. They are the parents of a son, born on February 7, 2002, and a daughter, born December 13, 2003. Since the parties' divorce, the Children have resided primarily with Father but have visited with Mother in Mexico, where she lived primarily between 2009 and 2014. On April 2, 2015, Father obtained a Protection from Abuse Order ("PFA") against Mother. On April 22, 2015, Father petitioned for sole custody of the Children. Mother filed an answer on June 4, 2015.

(3) Both parties appeared at a pretrial conference held on July 10, 2015. At that conference, the Family Court informed the parties that trial would be held on October 14, 2015. The Family Court also entered an interim visitation order allowing Mother to visit with the Children on Tuesdays from 9 AM to 2 PM and on Saturdays from 10 AM to 4 PM. On July 27, 2015, with the Family Court's permission, Father filed an amended petition for custody. Mother did not file an answer to the amended petition. On September 30, 2015, Father filed a motion requesting the Family Court to interview the children.

2

(4)     Trial was held on October 14, 2015.   Father appeared and presented several witnesses.  Mother failed to appear.  At the start of the trial, the Family Court asked Father's counsel if Father still wished to have the Children interviewed.  Father's counsel asked to defer responding to the question until the end of the trial.

(5)     The trial record reflects that Father has lived in the United States for eighteen years and is employed building houses.  After the parties divorced, the Children lived with Father in the former marital home, which Mother and Father continued to own jointly.  Between 2009 and 2014, Mother spent most of her time living in Mexico.  In 2009, with Father's consent, Mother traveled to Mexico with the parties' daughter, where she stayed for several months before returning the daughter home to Father.  Several years later, again with Father's consent, Mother took both Children to Mexico for several months.  Father paid the Children's travel and living expenses while they were with Mother.

(6)     After Mother returned to the United States with both Children, Father learned that she was pregnant with another man's child.  Mother stayed in the United States with her own mother to give birth but later returned to Mexico with her newborn.  Twice more, Mother returned to the United States from Mexico temporarily in order to give birth to two more

3

children. In 2014, Mother moved from Mexico back to the United States with her three young children. Because she had no other place to live, Father allowed Mother and her three young children to move in with him and their Children. Father testified that Mother, at that time, had expressed fear for her safety because she had witnessed a murder in Mexico, for which her boyfriend had been arrested.

(7)  Father testified that shortly after moving in, Mother began smoking marijuana daily and became very moody and aggressive toward Father and their Children. She would call the Children "dumb" and "stupid." Father became concerned about Mother's mental health after Mother told him that she had been sent by God to save the world. Father came home one day in July 2014 to find Mother and the Children gone and no note explaining their absence. Later that day, Father was contacted by the police informing him that Mother had been found with the Children in Virginia. She had been behaving erratically and had been arrested. Father immediately drove to Virginia to retrieve the Children.

(8)  Mother was admitted to a mental hospital in Virginia, where she stayed for several weeks. After she was released from the hospital, she and her three younger children moved out of Father's residence and moved in with her mother. In early 2015, however, Father allowed Mother and her

4

three children to move back into the former marital residence. Father and the parties' two Children moved out and went to live with Father's family.

(9) In March 2015, Mother became physically aggressive to Father in front of the Children. She tried to hit him and yelled obscenities at him. As a result, Father filed a PFA petition. On April 2, 2015, the Family Court entered a PFA ordering Mother to have no contact with Father for a period of two years. The Family Court also awarded Father temporary custody of the Children and did not provide Mother with any visitation rights. Nonetheless, after the scheduling conference in July 2015, the Family Court entered an interim order granting Mother daytime visitation with the Children two days per week. Father and his sister both testified at trial that, despite being granted interim visitation rights, Mother often picked the Children up late and dropped them off early and sometimes failed to appear for visitation at all.

(10) In addition to Father, the Family Court also heard testimony from Father's sister and two of his neighbors. This additional testimony corroborated Father's testimony that the children are happy and well-adjusted where they are living and that Father is a good parent who provides for the Children, participates in their schooling, and oversees their medical care. There also was evidence that the Children are doing well in school. At

the end of the testimony, Father's counsel stated that he would make the Children available for an interview if the Family Court believed it would aid its decision-making. Because the record was uncontroverted, however, the Family Court determined that it was not necessary to interview the Children.

(11) The Family Court issued its decision on November 10, 2015. It analyzed each of the eight "best interest" factors under 13 *Del. C.* § 722[3] and concluded that six of the eight factors favored Father's petition and that the other two factors did not apply. Nonetheless, the Family Court concluded that the "record lacks sufficient basis to award Father sole legal custody."

---

[3] Section 722(a) provides:

The Court shall determine the legal custody and residential arrangements for a child in accordance with the best interests of the child. In determining the best interests of the child, the Court shall consider all relevant factors including:

(1) The wishes of the child's parent or parents as to his or her custody and residential arrangements;

(2) The wishes of the child as to his or her custodian or custodians and residential arrangements;

(3) The interaction and interrelationship of the child with his or her parents, grandparents, siblings, persons cohabitating in the relationship of husband and wife with a parent of the child, any other residents of the household or persons who may significantly affect the child's best interests;

(4) The child's adjustment to his or her home, school and community;

(5) The mental and physical health of all individuals involved;

(6) Past and present compliance by both parents with their rights and responsibilities to their child under § 701 of this title;

(7) Evidence of domestic violence as provided for in Chapter 7A of this title; and

(8) The criminal history of any party or any other resident of the household including whether criminal history contains pleas of guilty or no contest or a conviction of a criminal offense.

The Family Court thus denied Father's petition. Although Father continued to have primary residential placement of the Children, the Family Court's order increased Mother's visitation to include overnights every Wednesday and every other weekend.

(12) Father raises two issues in his opening brief on appeal. First, he contends that the Family Court abused its discretion when it disregarded its own factual findings, reflecting that the best interest factors overwhelmingly and solely favored Father, and granted the parties' joint legal custody in default of Mother's appearance. Second, Father contends that the Family Court abused its discretion when it increased Mother's visitation over Father's objection and in the absence of any evidence that increased visitation with Mother was in the Children's best interests. Mother did not filed an answering brief on appeal.

(13) Under Delaware law, the Family Court must determine legal custody and residential arrangements consistent with the best interests of the child.[4] The criteria for determining the best interests of the child are set forth in 13 *Del. C.* § 722. The Family Court must balance those criteria according to the factual circumstances presented in each case. The weight given to one factor or combination of factors will be different in any given

---

[4] 13 *Del. C.* § 722(a).

proceeding.[5]  Because it is possible that the weight of one factor will counterbalance the combined weight of all other factors and be outcome determinative in some situations, we have held that the Family Court must address each aspect of Section 722 explicitly rather than implicitly.[6]

(14)  Our review of a Family Court custody decision includes questions of both fact and law.[7]  We have the duty to review the sufficiency of the evidence and to test the propriety of the findings.[8]  We will uphold the Family Court's factual findings unless those findings are clearly wrong.[9]  We will not substitute our opinion for the inferences and deductions of the trial judge if those inferences are supported by the record.[10]  We review questions of law, including the interpretation of statutes, *de novo*.[11]  If the Family Court has properly applied the law to the facts, then our standard of review is abuse of discretion.[12]

(15)  In this case, the Family Court properly reviewed the legal framework of 13 *Del. C.* § 722.  In its opinion, the Family Court recounted testimony from the hearing relative to each best interest factor and reached

---

[5]  *Fisher v. Fisher*, 691 A.2d 619, 623 (Del. 1997).
[6]  *Id.*
[7]  *Clark v. Clark*, 47 A.3d 513, 516 (Del. 2012).
[8]  *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).
[9]  *Clark v. Clark*, 47 A.3d at 516-17.
[10]  *Solis v. Tea*, 468 A.2d 1276, 1279 (Del. 1983).
[11]  *Clark v. Clark*, 47 A.3d at 517.
[12]  *Id.*

the following conclusions: As to factor 1—the wishes of the parents—the Family Court noted that Father wanted full custody of the Children and that Mother had failed to appear. Thus, the Court had no evidence of her wishes. The Family Court concluded that this factor "favors placement with Father."[13] As to factor 2—the wishes of the children—the Family Court concluded that this factor was inapplicable because the Court did not interview the Children. As to factor 3—the Children's interaction with their parents and other family and household members—the Family Court found that the Children have a positive and loving relationship with Father and his family and that the record was devoid of any evidence of Mother's relationship with the Children and the members of her household. The Family Court concluded that this factor favored Father's petition for full custody.

(16) As to factor 4—the Children's adjustment to their home, school, and community—the Family Court found that the Children have primarily resided with Father all of their lives and are happy, healthy, and well-adjusted to their home, school, and community. The Family Court concluded that this factor favored Father's petition for full custody. As to factor 5—the parties' mental and physical health—the Family Court found

---

[13] *Miller-Howard v. Mason*, File No. CN09-04640, Pet. No. 15-11181, at 5 (Del. Fam. Ct. Nov. 10, 2015).

no concerns with Father's mental or physical health, but stated that it was "concerned that Mother suffers from mental health issues."[14] The Family Court concluded that this factor favored Father's petition.

(17) As to factor 6—the parties' past and present compliance with their parental rights and responsibilities—the Family Court found that Father has been the primary caregiver and sole financial provider for the Children since the parties divorced. Mother's only financial contribution to the Children's care was $100, which she gave to Father after the Family Court scheduling conference in July 2015. The Family Court also found that Mother had not taken full advantage of the visitation rights afforded by the Family Court's interim order. The Family Court expressed concerned that Mother had taken the Children out of Delaware without providing Father any notice. The Family Court found Father to be a credible witness and further found "that Mother lacks the ability to carry out parental responsibilities due to mental health concerns."[15] The Family Court concluded that this factor favored Father's petition for full custody.

(18) As to factor 7—evidence of domestic violence—the Family Court found no concerns with respect to Father but found that Mother had been both verbally and physically abusive. The Family Court also found

---

[14] *Id.* at 11.
[15] *Id.* at 13.

10

two particular incidents of concern—Mother's unannounced trip to Virginia with the Children in July 2014, where she was later arrested and placed in a mental hospital, and the March 2015 incident that resulted in the PFA Order against her. The Family Court found "that Mother has been aggressive and used inappropriate language in the presence of [the] Children. Due to the July 2014 Virginia and March 2015 visitation incidents, Mother has shown signs of violent behavior."[16] Thus, the Family Court concluded that this factor "slightly"[17] favored Father's petition. Finally, with respect to factor 8—criminal history—the Family Court found no criminal record of import for either Mother, Father, or members of Father's household, and therefore concluded that this factor was inapplicable. The Family Court noted, however, that it did not have the identification of the members of Mother's household[18] and, thus, could not perform an appropriate background check.

(19) Notwithstanding its findings and conclusions with respect to the applicable factors, which exclusively and conclusively favored Father's petition, the Family Court denied the petition, holding that "the record lacks sufficient basis to award Father sole custody." The Family Court's only

---

[16] *Id*. at 14.

[17] *Id.*

[18] At the scheduling conference, Mother had indicated to the Family Court that her sister and her sister's children lived with her.

arguable rationale for its holding was grounded in its citation to 13 *Del. C.* § 701(a), which states:

> The father and mother are the joint natural guardians of their minor child and are equally charged with the child's support, care, nurture, welfare and education. Each has equal powers and duties with respect to such child, and neither has any right, or presumption of right or fitness, superior to the right of the other concerning such child's custody or any other matter affecting the child.

(20)   We conclude that the Family Court incorrectly applied the law to the undisputed facts of this case. The general language of Section 701(a) simply recognizes that every parent has equal rights and responsibilities with respect to their children, and that neither parent is entitled to a presumption of fitness superior to the other parent. That general language, however, is not outcome determinative, but must be considered in light of the specific factors set forth in Section 722 whenever the Family Court is required to determine the best interests of the children in their custodial and residential arrangements.

(21)   All of the evidence presented at trial favored Father's petition for full custody of the Children. That evidence was undisputed by Mother because she failed to appear. The Family Court noted that it had no evidence of the Mother's wishes with regard to custody of the children, had no evidence of Mother's relationship with the children or whether the Children wanted a relationship with Mother, had no evidence concerning

12

Mother's living arrangements for the children, had no evidence concerning the other members of Mother's household, had undisputed evidence that Mother suffered from mental health issues and had exhibited violent behavior, and had undisputed evidence that Mother had not fulfilled her financial responsibilities toward the Children and had not fully exercised her rights with respect to visitation with the Children.

(22) Because the Family Court improperly applied the law to the undisputed facts of this case, and the undisputed facts supported Father's petition for sole custody, the Family Court erred when it concluded that joint custody was in the children's best interests. Accordingly, we reverse.

NOW, THEREFORE, IT IS ORDERED that the decision of the Family Court is REVERSED. The matter is REMANDED to the Family Court for the sole purpose of entering an order granting Father full custody and maintaining Mother's visitation schedule as previously set forth in the Family Court's interim visitation order. Jurisdiction is not retained.

BY THE COURT:

*/s/ Collins J. Seitz, Jr.*
Justice