IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| CALEB RAVIN,[1] | § |
| | § No. 13, 2019 |
| Petitioner, | § |
| Appellant, | § Court Below—Family Court |
| | § of the State of Delaware |
| v. | § |
| | § File No. CN12-06874 |
| LYNN SPEARS, | § Petition No. 18-14759 |
| | § |
| Respondent, | § |
| Appellee. | § |

Submitted: October 25, 209
Decided: December 30, 2019

Before **VALIHURA**, **VAUGHN**, and **TRAYNOR**, Justices.

## **ORDER**

After consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)    The appellant, Caleb Ravin ("the Father"), filed this appeal from a Family Court order granting the parties' joint custody of their son, granting the appellee, Lynn Spears ("the Mother"), primary placement of the son with the Father having visitation, and granting the Mother's motion for permission to relocate to Georgia.  We affirm the Family Court's judgment.

---

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

(2)     The parties are the parents of a son born in 2009 ("the Child").  They had a tumultuous relationship, moving back and forth between Delaware and Georgia from 2008 through 2012.  Beginning in 2012, they both stayed in Delaware.  In June 2013, the parties entered into a custody consent order.  They agreed on joint custody with the Mother having primary residential placement.  Under the consent order, the Father had visitation every weekend with the parties agreeing to increase contact during the week depending on the Father's work schedule.

(3)     On May 17, 2018, the Father filed a petition to modify custody.  In the petition, the Father opposed the Mother's plans to move to Georgia with the Child at the end of the school year and asked that the Child live primarily with him.  In her answer to the petition, the Mother admitted that she wished to move to Georgia with the Child.  She did not file a motion for permission to relocate to Georgia.

(4)     On October 29, 2018, the Family Court held a hearing on the Father's petition. Both the Father and the Mother testified about the Mother's desire to move to Georgia.  The Family Court noted that the Mother had not filed a petition for relocation.  On December 11, 2018, the Mother filed a motion for permission to move to Georgia.  She attached a job offer from a Georgia employer that paid more and offered more regular hours than her Delaware job.

(5)     On December 13, 2018, the Family Court issued its decision.  After weighing the best interest factors under 13 *Del. C.* § 722 and the factors set forth in

2

the Model Relocation Act, the Family Court awarded the parties joint custody of the Child, granted the Mother primary residential placement, and allowed the Mother to move to Georgia. The Father was granted visitation that included summers, winter and spring breaks, and one weekend a month. This appeal followed. The Father filed a motion for an emergency ex parte order in the Family Court to prevent the Mother from moving to Georgia with the Child. The Family Court denied the motion.

(6) This Court's review of a Family Court decision includes a review of both the law and the facts.[2] Conclusions of law are review*ed de novo*.[3] The Family Court's factual findings will not be disturbed on appeal if they are supported by the record and are the product of an orderly and logical deductive process.[4]

(7) Under Delaware law, the Family Court must determine legal custody and residential arrangements for a child in accordance with the best interests of the child. The criteria for determining the best interests of a child are set forth in 13 *Del. C.* § 722.[5] When considering a petition for relocation, the Family Court may

---

[2] *Mundy v. Devon,* 906 A.2d 750, 752 (Del. 2006).
[3] *Id.*
[4] *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).
[5] The best interest factors include: (i) the wishes of the parents regarding the child's custody and residential arrangements; (ii) the wishes of the child regarding his custodians and residential arrangements; (iii) the interaction and interrelationship of the child with his parents, grandparents, siblings, persons cohabitating in the relationship of husband and wife with a parent of the child, and any other residents of the household or persons who may significantly affect the child's best interests; (iv) the child's adjustment to his home, school, and community; (v) the mental and physical health of all individuals involved; (vi) past and present compliance by both parents with

consider—in addition to the required § 722 factors—the factors set forth in the Model Relocation Act.[6]

(8)    On appeal, the Father first argues that the Family Court erred by granting the Mother's motion to relocate without giving the Father an opportunity to file a responsive pleading or argue against relocation.  The record below does not support this argument.  It is true that the Mother did not file a motion for permission to relocate until after the October 2018 hearing, but the Father raised the Mother's desire to relocate in his petition to modify custody.  On the first page of the petition, the Father stated that he did not want the Mother to take the Child to Georgia as she wished to do.  The Father then explained why the Child should stay with him in Delaware.  In her answer to the Father's petition, the Mother admitted that she wished to move to Georgia with the Child.

---

their rights and responsibilities to the child under 13 Del. C. § 701; (vii) evidence of domestic violence; and (viii) the criminal history of any party or any resident of the household.  13 *Del. C.* § 722.

[6] *Potter v. Branson*, 2005 WL 1403823, at *2 (Del. June 13, 2005) (holding the Family Court has the discretion to consider additional factors like the Model Relocation Act factors as long as it considers the mandated § 722 factors). The Model Relocation Act factors include: (i) the nature, quality, extent of involvement and duration of relationship of the child with each parent; (ii) the age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development; (iii) the feasibility of preserving the child's relationship with the non-custodial parent; (iv) the child's preference, considering age and maturity level; (v) whether there is an established pattern of the person seeking relocation either to promote or thwart the child's relation with the other parent; (vi) whether the relocation of the child will enhance the general quality of life for both the party seeking the relocation and the child, including but not limited to financial, emotional, or educational opportunity (including cultural opportunities and access to extended family); (vii) the reasons for seeking relocation; and (vii) any other factor affecting the interest of the child.

(9) At the October 2018 hearing, the Family Court noted that the Mother had not filed a petition for relocation when the subject of a move to Georgia came up. The Family Court proceeded to hear testimony about why the Mother wished to move to Georgia, the parties' connections to Delaware and Georgia, and the Mother's proposal (which the Father received before filing his petition) for the Father's visitation with the Child if she was allowed to move to Georgia. The Family Court questioned the Father about the Mother's statements and gave him the opportunity to respond to her testimony. The only new evidence that the Mother offered in her December 2018 motion to relocate was documentation of the Georgia job that she testified about at the October 2018 hearing. The Father's argument that he did not have the opportunity to oppose the Mother's relocation to Georgia is without merit.

(10) The Father next argues that the Family Court erred in finding that § 722(a)(1) (the wishes of the parents), (a)(3) (the child's interaction and interrelationship with the parents, other relatives, and other people in the household), and (a)(7) (evidence of domestic violence) weighed in favor of the Mother. The Father does not the challenge the Family Court's findings that factors (a)(2) (the wishes of the child), (a)(4) (the child's adjustment to his home, school, and community), (a)(5) (the mental and physical health of all individuals involved) and (a)(8) (the criminal history of the parties) were neutral and that factor (a)(6) (the

5

parents' past and present compliance with their rights and responsibilities) weighed in favor of the Mother.

(11) As to the parents' wishes, the Family Court found that this factor weighed in favor of the Mother because: (i) the Mother proposed a reasonable arrangement (the Child would live with her in Georgia, but spend summer, winter, and spring breaks with the Father); and (ii) the Family Court questioned the Father's sincerity in seeking sole custody because he had previously asked for a reduction in visitation with the Child. In reaching this conclusion, the Family Court noted that the Mother wished to move to Georgia because she had a support system and better job offer there. The Father argues that this factor weighed in his favor because the Mother offered no evidence of a support system or better job in Georgia. The Father fails to address the Family Court's questioning of his motives for seeking sole custody based on his previous request for a reduction in his visitation with the Child. When the determination of the facts turns on the credibility of the witnesses who testified under oath before the trial judge, this Court will not substitute its opinion for that of the trial judge.[7] The record supports the Family Court's conclusion that this factor weighed in favor of the Mother.

(12) As to the child's relationship with the parents, relatives, and others in the household, the Family Court concluded that this factor was neutral because the

---

[7] *Wife (J.F.V.),* 402 A.2d at 1204.

Child appeared to have a positive relationship with everyone in his life and both parents loved him. The Father argues that the Family Court erred in finding this factor neutral because the record reflects that the Child had frequent contact with the Father's family, but not with the Mother's family. The Mother testified that her mother died in 2012 and that she did not have a strong relationship with her relatives in New York. There was no testimony about the Child's relationships with the Mother's family or friends. In light of the record, the Family Court erred in finding this factor neutral rather than weighing in favor of the Father.

(13) Finally, the Father argues that the Family Court erred finding that § 722(a)(7) (evidence of domestic violence) weighed in favor of the Mother. The Father argues that this factor weighed in his favor because the Mother's description of four incidents in her answer to his petition do not reflect that she was injured by him, but do reflect that he was twice injured by her. The Father does not acknowledge the Mother's allegations that he slapped her, put his hands around her neck, threatened to kill her, and put her in a headlock. The Father emphasizes that of the two petitions for a protection from abuse ("PFA") order the Mother filed in Delaware, the Family Court dismissed one petition because the Mother failed to appear and found no abuse by the Father in the other petition. He also notes that he has not been charged with child abuse, but the Mother admitted in her answer that

7

she was arrested for child endangerment in Georgia after a physical confrontation with the Father and had to undergo counseling.

(14)  In holding that this factor weighed in favor of the Mother, the Family Court acknowledged the outcomes of the Mother's two PFA petitions in Delaware, but found that the Mother was credible in describing the physical and emotional abuse she suffered from the Father dating back to their time in Georgia.  The Family Court also noted that the Father admitted in his petition to pleading no contest to battery in Georgia after a fight with the Mother and testified that the Mother and the Child had to stay at a shelter after he kicked both of them out of his place.  The Family Court did not refer to the Mother's admissions in her answer regarding her arrests in Georgia.

(15)  The record reflects that there is a history of domestic violence between the parents.  The Family Court ultimately found the Mother more credible than the Father as to who was primarily responsible for this domestic violence.  As previously stated, this Court will not substitute its opinion for that of the trial judge when the determination of the facts turns on the credibility of the witnesses who testified before the trial judge.[8]  The record supports the Family Court's conclusion that this factor weighed in favor of the Mother.

---

[8] *Id.*

(16) Notwithstanding the Family Court's error as to § 722(a)(3), we conclude that the Family Court did not err in finding that the § 722 factors weighed in favor of denying the Father's petition for sole custody and primary residential placement and granting the Mother's petition to relocate. When balancing the relevant § 722 factors, the Family Court may give different weight to different factors.[9] The Family Court could, and did, give significant weight to the Father's admission that he had once kicked the Mother and the Child out of his place, forcing them to stay in a shelter, as well as the Mother's unrebutted testimony that the Father had previously requested a reduction in his visitation with the Child. The Family Court correctly applied the law and considered the best interest factors under 13 *Del. C.* § 722. We therefore affirm the Family Court's decision that it was in Child's best interests for the parents to have joint legal custody with the Mother having primary placement of the Child in Georgia.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.

BY THE COURT:

*/s/ Karen L. Valihura*_____
Justice

---

[9] *Bower v. Dep't of Servs. for Child, Youth & Their Families*, 2016 WL 3382353, at *4 (Del. June 9, 2016) (citing *Fisher v. Fisher*, 691 A.2d 619, 623 (Del. 1997)).