**Tara CLARK,[1] Respondent Below, Appellant,**

v.

**DIVISION OF FAMILY SERVICES, and Office of the Child Advocate, Petitioners Below, Appellees.**

No. 16,2009.

Supreme Court of Delaware.

Submitted: June 4, 2009.
Decided: June 25, 2009.

1. The Court, *sua sponte,* has assigned pseudonyms to all parties under Supr. Ct. R. 7(d).

Ashley M. Oland, Esquire, Law Office of Edward C. Gill, P.A., Georgetown, DE, for Appellant.

Kathryn L. Welch, Esquire, Department of Justice, Georgetown, DE, for Appellee Division of Family Services.

Heather Williams, Esquire, Office of the Child Advocate, Georgetown, DE, for Appellee Office of the Child Advocate.

Before STEELE, Chief Justice, HOLLAND and JACOBS, Justices.

JACOBS, Justice:

Tara Clark ("Tara") appeals from a Family Court order terminating her parental rights in her son, Trevor Clark, Jr. ("Trevor Jr."). On appeal, Tara claims that the Family Court abused its discretion by holding that terminating her parental rights was in the best interests of her son. We find no merit to Tara's claim and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Trevor Jr. was born in January of 2007, to Tara and Trevor Clark, Sr. ("Trevor Sr."). On August 16, 2007, Tara, Trevor Sr., Trevor Jr., and Daniel [2] (Tara's son by a different father) were involved in a serious car accident. Tara was driving the family car while highly intoxicated, and as a result Trevor Sr. was killed and Tara was seriously injured. On August 17, the Family Court granted the Division of Family Services ("DFS") temporary legal custody of Trevor Jr. On August 20, DFS filed a Dependency/Neglect Petition against Tara.

---

**2.** Daniel is not involved in this action, because he was placed in the care of his biological father.

On September 6, 2007, the Family Court appointed an attorney with the Office of the Child Advocate ("OCA") as Trevor Jr.'s guardian *ad litem.* On September 20, the Family Court approved a case plan for Tara to work towards reunification with her son. Under the reunification plan, Tara would have weekly visits with Trevor Jr., obtain employment and provide DFS with copies of her pay stubs, attend counseling, complete a mental health evaluation, obtain medication for her psychiatric problems, and find safe and stable housing.

Soon after the Division filed the Dependency/Neglect Petition, Viola and Ralph Vincent, and Patricia Xavier filed two separate petitions to be appointed as guardian of Trevor Jr. Viola Vincent is Trevor Sr.'s sister and Ralph Vincent is her husband. Patricia Xavier is Tara's aunt. In September and October of 2007, after conducting home studies of the Xavier and Vincent homes, DFS favorably evaluated the Vincents as a foster placement for Trevor Jr., but opposed placing the child with Xavier.

On November 13, 2007, a grand jury indicted Clark on charges of First Degree Vehicular Homicide, First Degree Vehicular Assault, and Driving Under the Influence of Alcohol in connection with the August 16 automobile accident. As a condition of her bail, the Superior Court barred Clark from driving, and from seeing Trevor Jr. without DFS supervision.

After completing its evaluation, DFS determined that the Vincents, were acceptable foster parents for Trevor Jr. On December 21, 2007, DFS placed Trevor Jr. with the Vincents, who soon thereafter petitioned the Family Court to adopt Trevor Jr.

On March 11, 2008, Tara was caught driving, her bail was revoked, and she was remanded to State custody. On March 13, she pled guilty to Criminally Negligent Homicide, First Degree Vehicular Assault, and Driving Under the Influence of Alcohol. Sentencing was scheduled for May 2008.

The Family Court held a reunification review hearing on March 20, 2008, in which the court heard evidence that until her arrest on March 11, Tara had been making progress on her case plan. Tara was living in a home that DFS found suitable for Trevor Jr., was enjoying weekly visits with her son, was working with a parent aide, and was attending counseling. Tara had also begun working at a fast food restaurant in February. At that hearing, DFS opposed Trevor Jr. continuing to visit Tara, because the long commute—from the Vincents' home in Oak Orchard to the women's prison in New Castle—was traumatic to the child. Ever since the accident that killed his father, spending long periods of time in a car had made Trevor Jr. anxious.

On May 20, 2008, the Superior Court sentenced Tara to five years imprisonment at Level 5, suspended after two years imprisonment and successful completion of the "Key Village Program" for six months at Level 4 for substance abuse treatment. The Key Village prison program provides education on drugs and alcohol, conflict resolution, parenting, and anger management.

On June 4, DFS petitioned the Family Court for a determination that DFS had made reasonable (albeit unsuccessful) efforts toward family reunification, and to change the case goal to one involving the termination of Tara's parental rights. On June 5, 2008, the Family Court held a permanency hearing and considered the DFS's petition. At that hearing, Patricia Xavier withdrew her guardianship petition, and the Vincents moved the Family Court to stay action on their guardianship petition until the court determined whether or

not to terminate Tara's parental rights. OCA urged the Family Court to begin termination proceedings so that the Vincents could adopt Trevor Jr.

On June 16, the Family Court issued a permanency order, having found that Tara's incarceration made it unfeasible for her to complete her reunification plan, and that she had been convicted of a crime against a minor. Either adjudicated fact, the court reasoned, was an independent basis to conclude that DFS was no longer obligated to provide Tara with reunification services. Concluding that it would not be in Trevor Jr.'s best interests to wait two and a half years for his mother's release from prison before he could have a full-time parent, the Family Court ordered a change in goal to a termination of parental rights.

On December 11, 2008, the Family Court held a termination hearing. On January 9, 2009, it issued a written order, determining that DFS had established the threshold conditions for terminating Tara's parental rights, because: (1) Tara had "failed to plan" for Trevor Jr.; (2) alternatively, she had been convicted of a crime against a minor; and (3) she had failed to comply with her case plan. The Family Court further found that Trevor Jr.'s best interests weighed in favor of terminating Tara's parental rights, and transferred Trevor Sr.'s parental rights to DFS, so that the Division could arrange for the Vincents to adopt Trevor Jr.

### ANALYSIS

#### The Family Court's Findings and Reasoning

The facts underlying the Family Court's finding that terminating Tara's parental rights served Trevor Jr.'s best interests were as follows:

1. ... Mother is opposed to the termination of her parental rights. Father is deceased. The other parties in this litigation [DFS and OCA] are in favor of a termination of parental rights.

2. ... Because [Trevor Jr.] is less than two years of age, the [c]ourt did not speak with him.... [I]nterview[ing] a child of such young age would not be helpful to the [c]ourt.

3. ... As a result of mother's accident, [Trevor Jr.] has been in the care of [DFS] since he was approximately seven months old. He visited with mother on a weekly basis through early 2008. Once mother was incarcerated, he visited with her on a monthly basis through July of 2008. Since then, there has been no contact between mother and child. Due to his young age, it is difficult for the [c]ourt to imagine that [Trevor Jr.] would have much recollection of mother at this time.

[Trevor] seems to be doing very well with his foster family, with whom he has now lived [ ] for over a year. His foster mother is his paternal aunt, and the foster father is her husband. Other children within the home are his paternal cousins. The [Vincent] home is appropriate, with sufficient bedrooms. The [Vincents] are addressing [Trevor Jr.'s] medical needs. The child maintains a relationship with other paternal relatives.

The [Vincents] desire that [Trevor Jr.] become a permanent member of their family, through adoption. Yet, they are hopeful that the child can maintain contact with maternal relatives. There is no indication that members of mother's family have attempted to contact the child.

4. ... Due to his young age, [Trevor Jr.] is not yet involved in school or

community activities. He seems well adjusted to his home.

5. ... Mother has a history of substance abuse and mental health issues. Substance abuse played a significant role in the motor vehicle accident, which resulted in [Trevor Jr.'s] father's death and mother's incarceration, and which caused the child to be placed in State custody. Mother claims to be receiving treatment for substance abuse and mental health issues while incarcerated....

6. ... Mother is a natural custodian of her minor child ... [and] is charged with the child's support, care, nurture, welfare, and education. Mother's incarceration makes it impossible for her to fulfill this responsibility.

7. ... There is evidence of domestic violence between mother and [Trevor Jr.'s] deceased father. Mother was convicted of Offensive Touching, a misdemeanor, in June of 2007. Mother admitted that she is borderline manic depressive, and that when she does not take her prescribed medication, she can become enraged, if provoked.

8. ... [M]other is currently incarcerated on charges of Criminally Negligent Homicide ..., Vehicular Assault in the First Degree, and Driving While Under the Influence.... Mother's criminal record indicates a conviction of Offensive Touching ... in June of 2007, a Disorderly Conduct charge, for which she received probation before judgment, in August of 2004; a violation of probation in June of 2004; and a Driving Under the Influence of Alcohol conviction in April of 2003.

Applying the relevant legal standard to those findings, the Family Court held that all but one of the "best interests" factors favored terminating the mother's parental rights:

The [c]ourt has considered mother's wishes under factor one ... [but] the position of the OCA, an independent agency that is focused on the best interests of the child, is particularly beneficial to the [c]ourt in determining that a termination of mother's parental rights is appropriate.

Factor two is not of assistance to the [c]ourt, due to the child's young age.

Factor three is particularly significant. Due to mother's arrest and incarceration, there is no longer a relationship between mother and the child, nor is there a relationship between [Trevor Jr.] and mother's family. There is a close relationship between the child and father's family, who have assumed the obligation of raising the child. The [c]ourt's findings with respect to this factor support the [c]ourt's determination to terminate mother's parental rights.

With respect to factor four, [Trevor Jr.] is appropriately adjusted to his home. The Court's findings with respect to this factor support the [c]ourt's determination to terminate mother's parental rights.

With respect to factor five, it is mother's substance abuse issues which are the primary reason why mother is incarcerated for an extended period of time, and is unable to parent her son. The [c]ourt's findings with respect to this factor support the determination that mother's parental rights should be terminated.

With respect to factor six, mother's actions have prevented her from caring for her child. The [c]ourt's findings

with respect to this factor support the [c]ourt's determination to terminate mother's parental rights.

With respect to factor seven, mother has a history of domestic violence, and admits that failure to take medication can cause her to become enraged. The [c]ourt is concerned that mother's behavior in this regard may place [Trevor Jr.] in a dangerous situation. The [c]ourt's findings with respect to this factor support the [c]ourt's determination to terminate mother's parental rights.

With respect to factor eight, mother's criminal activity has resulted in the death of [Trevor Jr.'s] father, injury to herself, and injury to another son.... It has resulted in mother receiving an extended period of incarceration, and left her in the position that she is unable to care for [Trevor Jr.]. The [c]ourt's findings with respect to this factor support the determination that mother's parental rights should be terminated.

[Trevor Jr.] is doing well with his foster family, who are also his paternal relatives. He has now lived with them for over a year. The [Vincents] are an adoptive resource. He seems to be living a very normal life. It is not in his best interests to change that.

\* \* \*

It is in the best interests of [Trevor Jr.] that mother's parental rights be terminated, so that he can be adopted.

### Discussion

On appeal, Tara advances two claims. First, she contends that the Family Court erroneously found that she "failed to plan" for Trevor Jr. Second, she argues that

Trevor Jr.'s best interests weighed in favor of granting the Vincents' guardianship petition rather than terminating her parental rights.

DFS and OCA dispute both claims, which raise two primary issues. First, did DFS establish the statutory prerequisites for a termination of parental rights? Second, did the Family Court err in determining that the best interests of the child weighed in favor of terminating Tara's parental rights rather than placing her son under guardianship? Those issues are addressed in that order.

*I. Tara's First Degree Vehicular Assault Conviction Was An Independent Basis to Terminate Her Parental Rights.*

Before terminating a parent's rights in a child, the Family Court must engage in a two-step analysis.[3] First, the court must find that at least one of the grounds for termination enumerated in 13 *Del. C.* § 1103(a) has been established. Second, the court must determine that the best interests of the child, as defined in 13 *Del. C.* § 722, weigh in favor of the termination. Both steps require proof by clear and convincing evidence.[4]

▆ The Family Court determined that Tara had "failed to plan adequately for [Trevor Jr.'s] physical needs or mental and emotional health and development[,]" and that she had been convicted of a felony against a child. Either determination, the Family Court concluded, independently established the necessary predicate under 13 *Del. C.* § 1103(a) for terminating Tara's parental rights. Whether DFS has established the statutory grounds to terminate

**3.** 13 *Del. C.* § 1103(a) (2008); *Div. of Fam. Serv. v. Hutton,* 765 A.2d 1267, 1271 (Del. 2001).

**4.** *Hutton,* 765 A.2d at 1271–72 (citations omitted).

parental rights is a legal issue that we review *de novo*.[5]

We conclude that Tara's claim that DFS failed to establish the statutory grounds for termination is without merit. 13 *Del. C.* § 1103 specifies several grounds for a termination of parental rights. Section 1103(a)(5) so provides where the parent(s) have failed "to plan adequately for the child's physical needs or mental and emotional health and development." And Section 1103(a)(4) so provides where, as here:

> The respondent has been found by a court of competent jurisdiction to have:
> a. Committed a felony level offense against the person, as described within subchapter II of Chapter 5 of Title 11, in which the victim was a child[.]

The Family Court held that Tara's Superior Court conviction of First Degree Vehicular Assault satisfied Section 1103(a)(4), because her minor son, Daniel, was a victim of the vehicular assault. Because Tara concedes that her Vehicular Assault conviction provides a legal basis to terminate her parental rights, we need not reach her claim that the Family Court erred in finding that she "failed to plan" for her son. Thus, the sole remaining issue is whether the Family Court correctly concluded that termination was in Trevor Jr.'s best interests.

### II. The Family Court Correctly Determined That Trevor Jr.'s Best Interests Weighed in Favor of Termination.

■ Applying the "best interests of the child" factors prescribed by 13 *Del. C.* § 722,[6] the Family Court determined that Trevor Jr.'s best interests weighed in favor of terminating Tara's parental rights. In performing its analysis, the Family Court did not explicitly address the possible alternative of placing Trevor Jr. under the guardianship of the Vincents, as opposed to terminating Tara's parental rights. The court's findings, however, support an implicit conclusion that terminating Tara's parental rights was preferable to a guardianship, because the court found that further delay in placing Trevor Jr. in a permanent and stable family situation would not be in the child's best interests.[7]

---

5. *See In re Heller,* 669 A.2d 25, 29 (Del.1995) (citing *In re Stevens,* 652 A.2d 18, 23 (Del. 1995)).

6. Section 722 provides that the Family Court shall consider:

> (1) The wishes of the child's parent or parents as to his or her custody and residential arrangements;
> (2) The wishes of the child as to his or her custodian(s) and residential arrangements;
> (3) The interaction and interrelationship of the child with his or her parents, grandparents, siblings, persons cohabiting in the relationship of husband and wife with a parent of the child, any other residents of the household or persons who may significantly affect the child's best interests;
> (4) The child's adjustment to his or her home, school and community;
> (5) The mental and physical health of all individuals involved;
> (6) Past and present compliance by both parents with their rights and responsibilities to their child under § 701 of this title;
> (7) Evidence of domestic violence as provided for in Chapter 7A of this title; and
> (8) The criminal history of any party or any other resident of the household including whether the criminal history contains pleas of guilty or no contest or a conviction of a criminal offense.

7. Specifically, the Family Court reasoned:

> It is not reasonable, though, to expect DFS to transport [Trevor Jr.] to Wilmington every week to visit with his mother, and therefore the parent/child contact, anticipated through weekly visits in the case plan, would not be achieved. In addition, visits would be limited in length, and overnight visits are apparently out of the question.
>
> * * *

Tara claims that the Family Court improperly weighed the "best interests of the child" factors. Specifically, she urges that the Family Court should have placed Trevor Jr. under the guardianship of the Vincents, because that arrangement would provide a caretaker for Trevor Jr. while still preserving the parent-child relationship. The Vincents, Tara asserts, were willing either to adopt Trevor Jr. or assume his guardianship. Either arrangement would allow her to have contact with the child. Therefore, she concludes, the child's best interests required a guardianship of Trevor Jr. rather than a termination of her parental rights.

DFS and OCA argue that the guardianship issue was not before the Family Court, because the Vincents requested that their guardianship petition be stayed pending the court's decision on termination. Therefore, DFS and OCA urge, as a procedural matter, this Court need not address Tara's argument that the Family Court improperly weighed her son's best interests in concluding that termination was proper. On the merits, DFS and OCA urge that the Family Court properly weighed the "best interests" factors, and correctly decided that termination was in Trevor Jr.'s best interests.

■ When reviewing a termination of parental rights, this Court reviews the facts and law, as well as the inferences and deductions made by the Family Court.[8] To the extent the issues on appeal implicate rulings of law, we review *de novo*.[9] To the extent the issues implicate rulings of fact, our review is limited to determining whether the Family Court's factual findings are supported by the record and are not clearly wrong.[10] We do not disturb inferences and deductions that are supported by the record and are the product of a logical and orderly reasoning process.[11] If the Family Court has correctly

Other [parts of the case plan] cannot be addressed in prison. Specifically, the requirement that mother show financial stability and that mother secure safe and stable housing will have to be put on hold until mother is released. Furthermore, mother's anticipated work with a parent aide will not occur while mother is incarcerated. The parenting class which is offered in prison is a general one, not directed to the particular needs of mother and [Trevor Jr.].

Not only is mother limited on her ability to address her case plan while incarcerated, but she will be unable to address certain issues until she is released. At the earliest, it appears that mother will be released from incarceration in January of 2010. It is not reasonable to believe that, upon her release, mother will be immediately able to secure stable employment and locate appropriate housing. In addition, it is not reasonable to believe that mother would be able to accomplish her work with a parent aide immediately upon her release from incarceration. Finally it is doubtful that mother will be able to develop a close relationship with [Trevor Jr.] while she is incarcerated.

Bonding between mother and son will have to wait until mother's release. As a result, it is impossible for the [c]ourt to predict how soon after January of 2010, mother will be able to care for [Trevor Jr.]. It seems that there will be a significant time after mother's release from prison before reunification can occur.

[Trevor Jr.] has been in the care of the State of Delaware, and out of the care of his mother, since he was seven months old. Seventeen months of his two years have been spent in foster care. [Trevor Jr.] should not have to wait at least another year, and in all likelihood significantly longer, to achieve permanency and stability in his life.

8. *Solis v. Tea*, 468 A.2d 1276, 1279 (Del.1983) (citations omitted).

9. *In re Stevens*, 652 A.2d 18, 23 (Del.1995) (citations omitted).

10. *Id.*

11. *Id.*

applied the governing law to properly determined facts, our review is limited to abuse of discretion.[12]

### A. The Family Court's Consideration of Guardianship as an Alternative to Terminating Tara's Parental Rights

Tara contends that in determining Trevor Jr.'s best interests, the Family Court was required to consider placing Trevor Jr. under a guardianship as an alternative to terminating her parental rights. We agree, but find that was done here, albeit implicitly. A judicial determination of a child's best interests does not take place in a vacuum. Because the Vincents voluntarily stayed their guardianship petition *pending the court's decision on termination,* the Family Court would have explicitly considered the guardianship petition had it concluded that termination was not in Trevor Jr.'s best interests. Although the Family Court was not required to address guardianship *explicitly,* in order to "determine the legal custody and residential arrangements for a child in accordance with the best interests of the child[,]" [13] where (as here) a guardianship is presented as an alternative, the Family Court must have determined *implicitly* that the guardianship alternative would not serve the child's best interests.[14]

### B. The Significance of the Vincents' Willingness to Permit Clark to Maintain a Relationship With Trevor Jr.

Tara next asserts—without reasoned argument—that the Vincents' willingness to allow her to maintain a relationship with her son establishes *per se* that a guardianship was a superior alternative to terminating her parental rights. The argument lacks merit. That the Vincents would allow Tara to maintain a relationship with her son was relevant, but not decisive, of whether terminating Tara's parental rights was in Trevor Jr.'s best interests. As this Court has noted in a similar context "[v]isiting a child and rearing one are different acts entailing different responsibilities." [15] That Tara may have a continued relationship with her son does not establish an overriding legal basis—irrespective of all other considerations relevant to the child's best interests—to continue parental rights.[16]

### C. The Family Court Properly Applied the Bests Interests Factors.

Finally, Tara claims that the Family Court abused its discretion in weighing the statutory best interests factors. The final issue thus becomes whether the Family Court abused its discretion in weighing the best interests factors. We conclude that it did not.

---

**12.** *Solis,* 468 A.2d at 1279.

**13.** 13 *Del. C.* § 722.

**14.** See n. 7, *supra.*

**15.** *Harper v. Div. of Family Servs.,* 953 A.2d 719, 725 (Del.2008) (holding that foster mother's willingness to let biological mother visit her child did not provide a basis for biological mother to oppose termination of parental rights).

**16.** This Court has noted that the Family Court may choose between guardianship and adoption when determining a child's custodial arrangement, but guardianship is "less legally secure than adoption." *CASA v. Dept. of Services for Children, Youth and their Families, DFS,* 834 A.2d 63, 66 (Del.2003). *Cf.* n. 7, *supra* (setting forth the Family Court's findings that terminating Clark's parental rights would help Trevor Jr. achieve "permanency and stability" in his life).

It is well-established that the Family Court may assign different weights to the various best interests factors, and that in some cases one factor may counterbalance or even outweigh the rest.[17] In its termination order, the Family Court specifically emphasized the third factor (the interaction and interrelationship of the child with his or her parents or persons who may significantly affect the child's best interests), as follows:

> Factor three is particularly significant. Due to mother's arrest and incarceration, there is no longer a relationship between mother and the child, nor is there a relationship between [Trevor Jr.] and mother's family. There is a close relationship between the child and father's family, who have assumed the obligation of raising the child. The [c]ourt's findings with respect to this factor support the [c]ourt's determination to terminate mother's parental rights.

Singling out the third factor as "particularly significant" indicates that the court gave it significant weight. Another factor (the second) was found to be neutral, and the remaining factors weighed in favor of termination. To establish that the Family Court abused its discretion, Tara must show that the Family Court's findings were not supported by the record or were not the product of a logical and orderly reasoning process. She has made no such showing. All she does is assert that:

> It is undisputed that Child has good interactions with Mother and that Mother has continually, through her incarceration, attempted to improve that bond through contact with the Division workers as well as the Read Aloud programs where she would read books on tape and then send them, with a tape recorder and the books to the Division in the hopes that the Division worker would play the tapes for Child.

That assertion, even if credited, is insufficient. Tara's good interactions with her son during his limited visitation does not diminish the force of the Family Court's finding that Trevor Jr. had developed a close relationship with the Vincents, but had essentially no relationship with his mother. The Family Court's heavy weighting of the third best interest factor is supported by its finding that:

> [Trevor Jr.] has been in the care of the State of Delaware, and out of the care of his mother, since he was seven months old. Seventeen months of his two years have been spent in foster care. [Trevor Jr.] should not have to wait at least another year, and in all likelihood significantly longer, to achieve permanency and stability in his life.

Whatever progress Tara may be able to make in working on her reunification case plan while in prison—or after her release—was properly found to fall short of the full-time parenting that any child, especially a very young child, requires. The evidence clearly supports the Family Court's finding that there was no longer a significant relationship between Tara and her son, and that Trevor Jr. had formed a close relationship with the Vincents. That finding, perhaps alone but certainly combined with the rest, provides an amply sufficient basis for terminating Tara's parental rights.

### CONCLUSION

For the foregoing reasons, the judgment of the Family Court is affirmed.

---

17. *Fisher v. Fisher,* 691 A.2d 619, 623 (Del. 1997).