IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ANAIS PETERS,[1] | § | |
| | § | No. 342, 2019 |
| Respondent Below, | § | |
| Appellant, | § | Court Below—Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | File No. 19-02-06TN |
| DEPARTMENT OF SERVICES FOR | § | Petition No. 19-04579 |
| CHILDREN, YOUTH AND THEIR | § | |
| FAMILIES, | § | |
| | § | |
| Petitioner Below, | § | |
| Appellee. | § | |
| | § | |
| IN THE INTEREST OF: | § | |
| HAYDEN PETERS | § | |

Submitted: December 16, 2019
Decided: February 14, 2020

Before **SEITZ**, Chief Justice; **VAUGHN** and **TRAYNOR**, Justices.

## <u>ORDER</u>

Upon consideration of the appellant's brief filed under Supreme Court Rule 26.1, her attorney's motion to withdraw, the response of the Department of Services for Children, Youth and Their Families/Division of Family Services ("DSCYF"), and the response of the child's attorney, it appears to the Court that:

(1)     The respondent below-appellant, Anais Peters ("the Mother"), filed an appeal from the Family Court's decision, dated July 8, 2019, terminating her parental

---

[1] The Court previously assigned pseudonyms to the appellants under Supreme Court Rule 7(d).

rights to her daughter ("the Child").[2]  On appeal, the Mother's counsel ("Counsel") has filed an opening brief and motion to withdraw under Supreme Court Rule 26.1. Counsel represents that she has made a conscientious review of the record and the law and found no meritorious argument in support of the appeal.  Counsel also makes several hypothetical arguments if she were required to make arguments.  The Mother has submitted no points for the Court's consideration.  In response to Counsel's submission, DSCYF and the Child's attorney have moved to affirm the Family Court's termination of the Mother's parental rights.

(2)    The Child was born in 2017.  On May 4, 2018, DSCYF sought, *ex parte,* emergency custody of the Child, alleging that the Mother was incarcerated for endangering the welfare of the Child after she threw the Child to the ground multiple times.  DSCYF also alleged that there were concerns about the Mother's mental health and both parents' substance abuse.  The Family Court granted emergency custody of the Child to DSCYF.

(3)    At the preliminary protective hearing on May 9, 2018, the Family Court appointed counsel to represent the Mother.  The Mother consented to a probable cause finding of dependency for the Child.  The Child was placed in the care of the maternal grandmother.

---

[2] The Family Court also terminated the parental rights of the Child's father, who filed a separate appeal (No. 339, 2019).  We only recite the facts in the record as they relate to the Mother's appeal.

(4) On June 6, 2018, the Family Court held an adjudicatory hearing. The Mother consented to the Family Court finding the Child dependent in light of the pending criminal charges against her. The Mother also agreed to accept services from DSCYF. The Family Court found that DSCYF had made reasonable efforts to prevent unnecessary removal of the Child and had provided reasonable notice to family members.

(5) On July 3, 2018, the Family Court held a dispositional hearing. The Mother's case plan was admitted into evidence. As part of her case plan, the Mother was required to complete mental-health and substance-abuse evaluations and follow any recommendations for treatment, work with a family interventionst, and complete parenting classes. The Mother was already employed and had housing. DSCYF had removed the Child from the maternal grandmother's care because she allowed the Mother to have unsupervised contact with the Child. As a result of the pending criminal charges against the Mother, there was a no-contact order between the Mother and the Child. The Child was doing well in foster care. The Family Court found that DSCYF was making reasonable efforts toward reunification.

(6) On September 25, 2018, the Family Court held a review hearing. The Mother had made some progress on her case plan by starting parenting classes and substance-abuse treatment. She continued, however, to test positive for PCP. She had not completed a mental health evaluation or seen a family interventionist. The

3

Mother's criminal charges relating to the Child were still pending and the no-contact order remained in effect. The Child was doing well in foster care. The Family Court found that DSCYF was making reasonable efforts toward reunification.

(7) The Family Court held another review hearing on December 17, 2018. The Mother did not appear for the hearing, but her progress on her case plan included completion of a parenting class, receiving treatment for her drug addiction and mental health, and maintaining her housing and employment. Her urine screens continued to test positive for PCP. After modification of the no-contact order, the Mother had begun visitation with the Child. The Mother's criminal charges— endangering the welfare of a child and second degree child abuse—remained pending. The Child continued to do well in foster care. The Family Court found that DSCYF had made reasonable efforts toward at reunification.

(8) On February 19, 2019, DSCYF filed a motion to change the goal to termination of parental rights. The Family Court held another review hearing on March 12, 2019. The Mother had completed her case plan, but continued to test positive for PCP and still faced criminal charges relating to the Child. She had cancelled several of her weekly visits with the Child. The Mother claimed for the first time that her use of Benadryl was causing false positive results for PCP in her urine screens. The Child continued to do well in foster care. The Family Court granted DSCYF's motion to change the goal to termination of parental rights. The

4

Family Court scheduled a termination of parental rights hearing for June 21, 2019.

(9) At the June 21, 2019 hearing, the Family Court heard testimony from both parents, the DSCYF treatment worker and permanency worker, the parents' family interventionists, the Mother's substance-abuse counselor, and the Child's court appointed special advocate. The testimony reflected that the Mother missed or was late for many of her scheduled visits with the Child. The Mother stopped taking Benadryl for a while, still tested positive for PCP, and resumed taking Benadryl. The Mother testified that she had taken Benadryl every day since a doctor told her to take it in 2006 for a skin condition that was common for women in their 30s. When asked why she kept taking Benadryl if it was causing false positive tests for PCP as she claimed, the Mother said she thought not taking Benadryl could negatively affect her health.

(10) Although the Mother was employed, her pay had dropped from approximately $500 a week to less than $100 a week recently because she was working less hours. The Mother testified that she missed work for personal reasons that she was unwilling to disclose. There was also testimony regarding DSCYF's unsuccessful efforts to find another relative placement for the Child. The permanency worker testified that the Child was doing well in foster care and that there were adoptive resources readily available. The criminal charges were still pending against the Mother.

(11) On July 8, 2019, the Family Court issued a decision terminating the parental rights of Mother and the Father. As to the Mother, the Family Court found by clear and convincing evidence that she had failed to plan adequately for the Child's needs under 13 *Del. C.* § 1103(a)(5). The Family Court also found that the Child had been in DFS care for more than six months, the Mother's employment was questionable, she had failed to overcome her PCP addiction, she continued to have unresolved criminal charges relating to the Child, and her visitation with the Child was inconsistent. The Family Court next found, by clear and convincing evidence, that DFS had made reasonable efforts to reunify the family. Finally, the Family Court considered the best-interest factors under 13 *Del. C.* § 722 and found, by clear and convincing evidence, that termination of parental rights was in the best interests of the Child.[3] This appeal followed.

(12) On appeal, this Court reviews the Family Court's factual and legal determinations as well as its inferences and deductions.[4] We will not disturb the

---

[3] The best-interest factors include: (i) the wishes of the parents regarding the child's custody and residential arrangements; (ii) the wishes of the child regarding her custodians and residential arrangements; (iii) the interaction and interrelationship of the child with her parents, grandparents, siblings, persons cohabitating in the relationship of husband and wife with a parent of the child, and any other residents of the household or persons who may significantly affect the child's best interests; (iv) the child's adjustment to her home, school, and community; (v) the mental and physical health of all individuals involved; (vi) past and present compliance by both parents with their rights and responsibilities to the child under 13 *Del. C.* § 701; (vii) evidence of domestic violence; and (viii) the criminal history of any party or any resident of the household. 13 *Del. C.* § 722.

[4] *Long v. Div. of Family Servs.*, 41 A.3d 367, 370 (Del. 2012).

6

Family Court's rulings on appeal if the court's findings of fact are supported by the record and its explanations, deductions, and inferences are the product of an orderly and logical reasoning process.[5] We review legal rulings *de novo*.[6] If the Family Court correctly applied the law, then our standard of review is limited to abuse of discretion.[7] On issues of witness credibility, we will not substitute our judgment for that of the trier of fact.[8]

(13)  The statutory procedure for terminating parental rights requires two separate inquires.[9] First, the Family Court must determine whether the evidence presented meets one of the statutory grounds for termination.[10] Second, the Family Court must determine whether termination of parental rights is in the best interests of the child.[11] Both of these requirements must be established by clear and convincing evidence.[12]

(14)  Counsel states that she found no arguably appealable issues, but that if required to make arguments, she would argue that: (i) the Mother's Benadryl use caused false positive results for PCP; and (ii) the Family Court gave insufficient weight to some best-interest factors (such as the Mother's opposition to termination

---

[5] *In re Heller*, 669 A.2d 25, 29 (Del. 1995).
[6] *Id.*
[7] *CASA v. Dep't of Servs. for Children, Youth and Their Families*, 834 A.2d 63, 66 (Del. 2003).
[8] *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).
[9] *Shepherd v. Clemens*, 752 A.2d 533, 536-37 (Del. 2000).
[10] 13 *Del. C.* § 1103(a) (listing the grounds for termination of parental rights).
[11] 13 *Del. C.* § 722(a).
[12] *Powell v. Dep't of Servs. for Children, Youth and Their Families*, 963 A.2d 724, 731 (Del. 2008).

of her parental rights and the severing effect that termination would have on the Child's relationships with biological family members) while giving too much weight to other factors (such as the Mother PCP use, her recent changes in income, and the pending criminal charges). These hypothetical arguments are without merit.

(15) Despite months of positive PCP results, the Mother did not raise her use of Benadryl as a possible reason for those results until February 2019. The Mother testified that she had taken Benadryl every day for a skin condition since 2006 based on a doctor's advice, but was unable to identify the skin condition. She briefly discontinued using Benadryl in 2019, but still tested positive for PCP. The Mother testified that she resumed taking Benadryl because she thought not taking it could affect her health, but she did not testify that her skin condition had returned or that she sought any medical advice about taking Benadryl again. As the trier of fact and the sole judge of witness credibility, it was for the Family Court judge to determine whether the Mother's testimony was credible.[13] The record supports the Family Court's conclusion that the Mother's testimony was not credible and that she was attempting to mask her continued PCP use by claiming that she had to take a medication (Benadryl) that supposedly caused false positive results for PCP.

(16) As to the Family Court's weighing of the best interest factors, the

---

[13] *See supra* n.8.

Family Court may give different weight to different factors.[14]  Even with the Mother's wishes and the Child's ability to readjust to living with the Mother weighing against termination of termination of parental rights, the weight of the factors in favor of termination of parental rights (including the Mother's continued PCP use, her unexplained reduction in income, and then-pending criminal charges that arose from her abuse of the Child) supported the Family Court's finding, by clear and convincing evidence, that termination of the Mother's parental rights was in the Child's best interests.

(17)   After careful consideration of the parties' positions and the record on appeal, we conclude that the Mother's appeal is wholly without merit.  We are also satisfied that the Mother's counsel has made a conscientious effort to examine the record and the law and has properly determined that the Mother could not raise a meritorious claim in this appeal.  We therefore affirm the Family Court's termination of parental rights.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.  The motion to withdraw is moot.

BY THE COURT:

/s/  James T. Vaughn, Jr.
Justice

---

[14] *Bower v. Dep't of Servs. for Child, Youth & Their Families*, 2016 WL 3382353, at *4 (Del. June 9, 2016) (citing *Fisher v. Fisher*, 691 A.2d 619, 623 (Del. 1997)).